952 F.2d 395
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ELOX CORPORATION, Plaintiff-Appellee,
v.
COLT INDUSTRIES, INCORPORATED, Defendant-Appellant.
 No. 90-2456.
 United States Court of Appeals, Fourth Circuit.
 Argued May 9, 1991.
Decided Dec. 16, 1991.
As Corrected Jan. 7, 1992.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. (CA-89-230-C-C-M), James B. McMillian, Senior District Judge.
 Argued: Peter Wesley Benner, Shipman & Goodwin, Hartford, Conn., for appellant; William L. Rikard, Jr., Parker, Poe, Adams & Bernstein, Charlotte, N.C., for appellee.
 On Brief: Michael P. McKeon, Shipman & Goodwin, Hartford, Conn.; Hayden J. Silver, III, Moore & Van Allen, Charlotte, N.C., for appellant; Regina J. Wheeler, Parker, Poe, Adams & Bernstein, Charlotte, N.C., for appellee.
 W.D.N.C.
 AFFIRMED.
 Before MURNAGHAN and SPROUSE, Circuit Judges, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This dispute arises out of an Asset Purchase Agreement (the Agreement) between Colt Industries, Inc. (Colt) and Elox Corporation (Elox) to sell a division of Colt (the Division) to Elox.* The $9,000,000 sale price was subject to closing adjustments. The closing adjustments were to be based on the changes in the net worth of the Division between November 22, 1987, the date of the balance sheet from which the closing figures were drawn, and January 7, 1988, the closing date. Under the Agreement, Colt was to calculate the closing adjustments; if Elox agreed with the adjustments, the sale price would be set using those calculations. However, if Elox did not agree with the calculations, further proceedings were necessary as provided in the Agreement.
 
 
 2
 Section 2.4 of the Agreement contained a clause which stated:
 
 
 3
 If Seller [Colt] and Buyer [Elox] cannot agree on any issue relating to the determination of the Closing Adjustments within 30 days after delivery of the Adjustment Certificate (or such longer period as the parties hereto may mutually agree to), then the matter or matters in dispute shall be submitted to Arthur Andersen & Co. (or another mutually agreeable national accounting firm if Arthur Andersen & Co. declines to accept such submission for any reason) for resolution in accordance with the applicable terms of this Agreement. Such national accounting firm shall make its determination within 60 days (or such longer period as the parties hereto may mutually agree to) of submission of the matter or matters in dispute for resolution, and the parties shall be bound by such determination and shall share equally any costs and expenses of such submission or determination. The Net Adjustment, as determined by such national accounting firm, shall be paid by Buyer or Seller, as the case may be, within 10 days of such determination.
 
 
 4
 Colt computed the net adjustments due Elox at $383,404. Elox did not agree to Colt's calculation of the amount of closing adjustments, computing the amount due in its favor as $891,796.10. The parties initially agreed to submit the dispute to Arthur Andersen & Co. However, Arthur Andersen & Co. declined the submission, so Elox suggested that the dispute be submitted to Price Waterhouse. Colt initially agreed to submit the dispute to Price Waterhouse. However, when Elox would not agree to the restrictions Colt placed on arbitration, Colt declined to proceed with arbitration.
 
 
 5
 Elox brought this action to compel arbitration pursuant to 9 U.S.C. § 4 (1988), claiming that § 2.4 of the Agreement was an arbitration clause. The district court agreed, and ordered that the matter be submitted to Price Waterhouse for resolution. Colt appealed raising three central issues: whether venue in the district was proper; whether the dispute was subject to arbitration; and whether the district court erred in refusing to limit the scope of arbitration.
 
 
 6
 * The first issue on appeal is the propriety of venue in the district court. Colt contends that venue was improper in the Western District of North Carolina, and that the case should have been transferred, dismissed, or stayed pending decision in another district. The Federal Arbitration Act provides that a district court deciding a motion to compel arbitration shall defer to the terms of the parties' agreement. 9 U.S.C. § 4. The district court must, therefore, apply a forum selection clause contained in the agreement if such a clause exists. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12-15 (1972); Snyder v. Smith, 736 F.2d 409, 418 (7th Cir.), cert. denied, 469 U.S. 1037 (1984). Further, if a court orders arbitration, the arbitration must be held in the same district as the court. 9 U.S.C. § 4. National Iranian Oil Co. v. Ashland Oil, Inc., 817 F.2d 326, 330 (5th Cir.), cert. denied, 484 U.S. 943 (1987).
 
 
 7
 Colt asserts venue should have been determined according to § 7.7 of the Agreement, which provides that the contract "shall be governed in all respects, including validity, interpretation and effect, by the laws of the State of New York." Colt further argues that § 7.7 is a forum selection clause, and that the district court erred in refusing to dismiss the case or transfer it to New York, or to stay it pending decision by a district court in New York.
 
 
 8
 Elox argues that § 7.7 is a choice of law provision rather than a forum selection clause. We agree. The provision, silent on the issue of venue, provides only the law which shall govern the interpretation and validity of the Agreement. The plain language of the clause reveals that it governs choice of law, and does not compel selection of a particular forum. Further, as the subject matter of the dispute and many of the assets in question, as well as many of the witnesses, are in North Carolina, venue in the district court was proper. Therefore, we reject Colt's contention that the district court erred in refusing to dismiss, transfer, or stay the case. See Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir.1984) (court to undertake weighing of factors in venue determination; location of key witnesses a factor in that determination).
 
 II
 
 9
 Colt argues that even if venue was proper in the district court, the dispute was not subject to arbitration. The question of whether the parties agreed to arbitrate is one for the court to decide. AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649 (1986). Colt does not dispute the fact that the parties entered into a contract, or that Colt has refused to arbitrate, 9 U.S.C. § 4, but contends that § 2.4 does not contain an arbitration clause, and that even if there is an arbitration clause the disputed issues do not fall within that clause.
 
 
 10
 The district court concluded that the clear language of § 2.4 manifested the parties' intent to arbitrate. We agree. The language of that section provides that any issue relating to the determination of the closing adjustments is to be submitted to Arthur Andersen & Co., or another mutually agreed-upon national accounting firm, for resolution, and that the parties are to be bound by that resolution. This language on its face "manifests an intention by the parties to submit certain disputes to a specified third party for binding resolution." McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 830 (2d Cir.1988); see also Butler Prods. Co. v. Unistrut Corp., 367 F.2d 733, 734-36 (7th Cir.1966) (treating as arbitration clause contractual language providing that disputed matters were to be submitted to an accounting firm for resolution). The dispute here relates to the scope and amount of closing adjustments, an issue on which the parties have been unable to agree. Therefore, we conclude that the district court was correct in holding that the parties had entered into an agreement to arbitrate, and that the agreement covered all issues relating to the determination of the closing adjustments. See Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974) (district court must order compulsory arbitration under 9 U.S.C. § 4 "if there has been a 'failure, neglect, or refusal' of any party to honor an agreement to arbitrate" (quoting 9 U.S.C. § 4)).
 
 III
 
 11
 Colt argues that if the dispute is subject to arbitration, the district court should have limited the scope of arbitration in several ways. First, Colt contends that the district court erred in denying its motion for a trial to decide whether the amounts in dispute are closing adjustments. Colt argues that the amounts in dispute are not closing adjustments, and that they therefore are not subject to the arbitration clause. Colt also contends that even if a trial on the issue of the scope of arbitration was not necessary, the district court should have held that the parties' dispute was not subject to arbitration as a matter of law. Finally, Colt contends that the scope of arbitration should be limited to the change in circumstances between the November 22, 1987, balance sheet and the January 7, 1988, closing date. Colt contends that any other adjustment to the purchase price is not a closing adjustment as defined in § 2.4.
 
 
 12
 Elox contends that the issue before the district court was strictly a matter of law, and as such it was properly resolved without a trial. Elox further asserts that the district court properly refused to limit the scope of arbitration as requested by Colt. Finally, Elox contends that any dispute regarding valuation of the Division relates to closing adjustments, so the scope of arbitration should not be limited to change in circumstances between the balance sheet and the closing date figures.
 
 
 13
 Whether a matter is arbitrable is a question of law involving construction of the contract. Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co., 706 F.2d 155, 159 (6th Cir.1983). The court is required to determine whether the party seeking arbitration is making a claim which is on its face covered by the arbitration clause of the contract. United Steelworkers v. American Mfg. Co., 363 U.S. 564, 568 (1960). Whether a particular claim should be arbitrated is a matter for the determination of the arbitrator. Id. Because Colt does not dispute that it entered into a contract or that it refused to arbitrate, the only issues presented to the district court were the existence of an arbitration clause and the applicability of that clause to the parties' dispute. 9 U.S.C. § 4. As noted above, there is an arbitration clause in the contract. The only remaining issue, then, is the applicability of the arbitration clause, a matter of law which was properly decided without a trial.
 
 
 14
 In this case, § 2.4 specified that all issues related to the determination of the closing adjustments were to be decided by an accounting firm. The dispute over whether the amounts at issue are properly considered closing adjustments is properly classified as an issue relating to the determination of closing adjustments. Disagreements related to the scope of arbitration are resolved in favor of arbitration. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); AT & T Technologies, 475 U.S. at 650; Butler Prods., 367 F.2d at 736 (if scope of arbitrability is "fairly debatable," construction of the agreement is to be decided by the arbitrator). Further, absent an express provision excluding a particular claim from arbitration or other compelling reasons, the claim will not be excluded from an order directing arbitration. Cincinnati Gas & Elec., 706 F.2d at 159-60 (citing United Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 584-85 (1960)). Colt has presented no compelling reason why any issue related to closing adjustments should not be arbitrated, and the contract itself does not limit the scope of arbitration. Further, closing adjustments are not expressly limited to changes in circumstances between the balance sheet and closing date in § 2.4. Therefore, this issue falls within the arbitration clause, and the district court correctly declined to hold a trial on it.
 
 IV
 
 15
 In conclusion, we hold that venue was proper in the district court. The district court correctly concluded that § 2.4 of the Agreement contained an arbitration clause, and we affirm its order compelling arbitration. Finally, the court correctly held that the scope of the arbitration provision as it relates to the closing adjustments is to be determined in arbitration. Consequently, we affirm the district court's order in all respects.
 
 
 16
 AFFIRMED.
 
 
 
 *
 Colt is a Pennsylvania corporation with its principal place of business in New York. Elox is a North Carolina corporation. The Division is located in North Carolina